UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CR-07-TAV-HBG |
| | ) | |
| RICHARD HALL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge H. Bruce Guyton (the "R&R") [Doc. 32]. The R&R addressed defendant Richard Hall's Motion to Suppress [Doc. 11]. The magistrate judge held a hearing on the motion on July 18, 2013 [Doc. 26]. The magistrate judge later issued the R&R [Doc. 32], recommending that the Court deny defendant's motion [*Id.* at 18]. The defendant has submitted objections to the R&R [Doc. 33], and the government has submitted a response to those objections [Doc. 34].

I. **Background**

The defendant is charged with being a previously convicted felon in possession of firearms and ammunition on or about September 14, 2012, in the Eastern District of Tennessee [Doc. 1]. The firearms and ammunition were discovered during the execution of a search warrant of the defendant's property located at 225 Andy Carr Avenue in Alcoa, Tennessee, which was issued by a state court judge after police received

information that the defendant was the source of crack cocaine used in a controlled buy [Doc. 33 at 2]. During the execution of the search warrant, law enforcement discovered several firearms inside the defendant's residence but did not discover any drugs [*Id.*].

In order to obtain the search warrant which ultimately led to the discovery of the firearms, an affidavit was submitted by Investigator Rusty Aycocke of the Fifth Judicial Drug Task Force ("Aycocke"), which states that the task force had received multiple complaints about the defendant as being a seller of cocaine. In the affidavit, Aycocke states that he had been using a confidential informant since 2012, when the informant had advised Aycocke that the informant could purchase illicit drugs in Blount County [*Id.*]. In the past, the informant had given information to Aycocke which was corroborated by Aycocke and other members of the task force through past or current investigations [*Id.*]. Aycocke claims that everything the informant had reported in the past had "been found to be credible and reliable," and that Aycocke had listened to recordings from previous controlled purchases, recognizing them as "true and accurate depictions" of the informant's reports [*Id.*]. Aycocke goes on to describe a controlled buy between a confidential informant and a seller that took place approximately sixty-nine hours before the filing of the affidavit [Doc. 16-1 at 4]. At the time of the drug transaction, the confidential informant was equipped with an audio/video recording device.[1]

---

[1] In the R&R, the magistrate judge noted the existence of the recording from this transaction, but did not consider it because it was not available to the issuing judge. The Court also notes that this recording was previously at issue as part of a motion for discovery filed by defendant, which was denied by the magistrate judge, which was affirmed by the Court after an appeal from the defendant [*See* Docs. 20, 23].

2

Aycocke's affidavit states that, after equipping the informant with the device and handing him "marked buy money," Aycocke observed the defendant meet with the seller in order to purchase cocaine in the neighborhood where defendant resided [*Id.*].[2] When the confidential informant returned with cocaine, Aycocke took possession of the cocaine and debriefed the informant [*Id.*]. The informant told Aycocke that, when the informant first met with the seller, the seller had stated that he was out of cocaine and would have to go into "Bubba's" to get it [Doc. 16-1 at 4]. Aycocke's affidavit states that the defendant also goes by the alias of "Bubba Cool" [*Id.*]. The informant proceeded to observe the seller walk directly into a structure located at 225 Andy Carr Avenue,[3] without encountering anyone else [*Id.*]. When the seller returned from the structure located at 225 Andy Carr Avenue, without encountering anyone else, the seller was in possession of cocaine. The seller then delivered the cocaine to the informant, who noticed that the seller had additional cocaine which he had obtained from 225 Andy Carr Avenue [*Id.*]. The informant also stated to Aycocke that, within the past two weeks, he had personally observed the defendant conduct crack cocaine sales inside the structure located at 225 Andy Carr Avenue and that, also within the past two weeks, he had observed the defendant return to the property located at 225 Andy Carr Avenue after completing cocaine sales [*Id.*].

---

[2] Aycocke notes that the task force has intelligence that links the seller and the defendant as being associates [*Id.*].

[3] The R&R characterizes the specific location where the seller went, and where the informant had previously observed drug transactions, as a garage-type building [Doc. 32 at 6].

3

After describing his interaction with the informant, Aycocke also states that he had interviewed a second confidential source during August who had reported to recently receiving crack cocaine from the defendant from inside the property located at 225 Andy Carr Avenue [Doc. 16-1 at 1]. Aycocke's affidavit also notes that he had conducted a check of the defendant's criminal history and confirmed that the defendant had previous felony drug convictions for the sale of cocaine [*Id.*]. From these facts, the state judge issued the search warrant which led to the discovery of firearms and the defendant's subsequent arrest.

## II. Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected, considering the R&R, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the relevant law.

## III. Analysis

### A. The R&R's Finding of Probable Cause

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. To that end, a judge may not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, probable cause to search means

4

"a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In reviewing the issuance of a search warrant based on probable cause, courts are deferential to the issuing magistrate judge's finding of probable cause, which "'should not be set aside unless arbitrarily exercised.'" *United States v. Goff*, 6 F.3d 363, 366 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39; *see also United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008) (noting that "when judging the sufficiency of an affidavit to establish probable cause in support of a search warrant . . . reviewing courts are to accord the magistrate's determination great deference" (quotation omitted)).

The defendant objects to the R&R's conclusion that the search warrant was supported by probable cause, arguing that there was no independent investigation to test the veracity of the statements made by the informant or by the seller to the informant, the latter of which the defendant describes as unreliable double hearsay. Thus, the defendant argues, there was no corroboration of the information provided to Aycocke, so that his affidavit based on that information cannot be considered in making a probable cause determination. As to the second confidential source, the defendant argues that this

5

portion of the affidavit discusses a previous drug sale that is too remote in time to be reliable, and that is there no indication that the information was corroborated by law enforcement. Finally, the defendant asserts the statements pertaining to citizen complaints are insufficient to support a finding of probable cause. The government, in relying upon its arguments before the magistrate judge, argues that there was sufficient, reliable information to support the magistrate judge's finding of probable cause.

### 1. Confidential Informant

The defendant argues that there was insufficient corroboration and investigation of the statements provided to Aycocke by the informant, and that the informant's statements contained in the affidavit about the defendant are unreliable, so that they cannot form the basis for a determination of probable cause. This Court reviews the sufficiency of an affidavit in a commonsense, rather than hypertechnical manner. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001). "[W]hen the majority of the information in the affidavit comes from confidential sources, as it does in this case, courts 'must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances.'" *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). The Sixth Circuit, however, has held that to the extent a "confidential informant—personally known by the affiant to be reliable—allege[s] direct, personal observation of criminal activity, then the affiant would not have to include in the affidavit further corroboration of the informant's

6

allegations." *United States v. Brown*, --- F.3d ---, 2013 WL 5495674, at *3 (6th Cir. June 27, 2013) (citing *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000)).

In this case, Aycocke provided substantial information to the issuing judge as to the informant's credibility and reliability. While Aycocke did not provide the informant's name to the issuing judge, Aycocke's affidavit notes that he had met with the informant numerous times prior to and after controlled drug purchases, and had previously given detailed information about drug dealers and drug trends in Blount County that had been corroborated in the past by law enforcement. *See, e.g. Dyer*, 580 F.3d at 391 (noting that statements of informant "'whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source'" (quoting *United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005))). In addition to general statements regarding the informant's reliability, and the informant's familiarity with cocaine and the drug trade, Aycocke states that the informant had performed numerous controlled drug purchases which were recorded, and that the informant's report of these purchases was consistent with the recordings. The Court finds that Aycocke provided the issuing judge with sufficient information as to the reliability of the informant so that independent corroboration was unnecessary as to what the informant observed.

This case, however, is different from the typical case in which a confidential informant completes a controlled purchase with the subject of the search warrant, in that in this case the informant gave the marked money to the seller, an intermediary, who

7

proceeded onto the defendant's property and returned with cocaine. *Cf. United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006) (describing "modified control buy," in which informant gave marked bills to third-party, who went to address in question, and later returned with cocaine). The defendant argues that this distinction completely diminishes the reliability of the seller's statements to the informant, and thus the informant's statements to Aycocke, because there are multiple layers of hearsay present. The Court disagrees. "It is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant," *Dyer*, 580 F.3d at 390, so long as there are sufficient indicia of reliability, *id*. In this case, there are sufficient indicia of reliability as to the seller's hearsay statements. Initially, the Court notes that the informant's own, personal observations corroborate the events described to the informant by the seller. The informant observed the seller walk directly into the defendant's structure, without speaking or encountering anyone else, and similarly observed the seller return to the informant without encountering anyone else. While the informant did not observe this particular transaction, the informant reported to Aycocke that in the two weeks preceding the controlled purchase, he had watched the defendant conduct cocaine sales at the same structure located at 225 Andy Carr Avenue, and had similarly seen the defendant walk into a "residential structure" at the same address after

8

completing cocaine sales.[4] In addition, the informant's statement that the seller indicated he needed to obtain more cocaine from "Bubba's" is consistent with information which Aycocke already knew, that is, that the defendant was also known as Bubba Cool, and was an associate of the seller.

Moreover, it appears to the Court that there was at least some independent corroboration conducted by law enforcement prior to Aycocke's completion of the affidavit, although the Court agrees with the magistrate judge that it was unnecessary. In addition to setting up and carrying out the controlled buy, Aycocke conducted a check of the defendant's criminal history, which revealed that the defendant had several previous convictions for the sale of cocaine. While not dispositive, a defendant's criminal history is relevant to the probable cause inquiry. *United States v. Dyer*, 580 F.3d at 392 (noting that fact that defendants had outstanding warrants for drug crimes, including manufacturing methamphetamine, as well as a criminal history involving methamphetamine, were relevant in determining whether probable cause existed for search of cabin for evidence of methamphetamine manufacturing). This is because "a "'person of reasonable caution would take into account predilections revealed by past

---

[4] The defendant argues that the informant's statements regarding past drug sales suffer from "staleness," citing to *Hython*, 443 F.3d at 486. *Hython* is inapposite to the facts of this case, however, because in *Hython*, in addition to the fact that informant did not personally observe where the third party obtained cocaine, the Court found that "the affidavit offers no clue as to when this single controlled buy took place," *id.* at 486. In this case, the controlled purchase took place within three days of the filing of the affidavit, and is consistent with the informant's reports of observing drug sales two weeks earlier. *See United States v. Thomas*, 605 F.3d 300, 310 (6th Cir. 2010) (noting that otherwise stale information may be refreshed by recent, corroborating information).

9

crimes or convictions as part of the inquiry into probable cause.'" *Id.* (quoting *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006)).

The defendant argues that the affidavit does not contain specific evidence with respect to the reported drug transactions that took place on the defendant's property, specifically noting that there are no drug amounts listed in the affidavit, and that the informant never reports that he specifically purchased drugs from the defendant. Similarly, the defendant argues that there is no evidence indicating that the drugs came from the defendant's property, rather than from the seller himself. With regard to these arguments, the Court notes that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. The defendant's arguments with respect to whether the informant actually knew that the cocaine came from the defendant's property, rather than the seller, are similarly immaterial to the determination of probable cause. *See United States v. Frechette*, 583 F.3d 374, 380 (6th Cir. 2009) ("Certainty has no part in a probable cause analysis."). Nor is the Court persuaded by the defendant's arguments that additional surveillance and or further independent investigation prior to the issuance of the search warrant were required by the Fourth Amendment, as such requirements have the potential to "handicap" law enforcement and aid lawbreakers. *See, e.g. Allen*, 211 F.3d at 976 (noting that requiring close surveillance could lead to law enforcement detection, and noting that delays in issuing warrant "would provide a further advantage to drug dealers' already highly mobile, hit-and-run operations"). The Court thus concludes that the R&R

10

correctly held that the information relayed to Aycocke by the informant provided a sufficient basis for the issuing judge to find probable cause.

### B. Second Confidential Source

The Court's finding in this regard is strengthened by the fact that Aycocke's affidavit also contains statements from a second confidential source, who stated that he had purchased cocaine from the defendant while inside a structure located at 225 Andy Carr Avenue during the month of August. As the magistrate judge found, this portion of the affidavit contains no information with respect to the source's historical reliability, nor is there any evidence of independent police corroboration, other than Aycocke's search of the defendant's criminal record. The defendant argues that this aspect of the affidavit lacks specificity and corroborative evidence, similar to his arguments with respect to the informant. The Sixth Circuit, however has continually noted that a "commonsense review" of an affidavit means that a court "review[s] the affidavit 'based on a totality of the circumstances' determination, rather than a line-by-line scrutiny." *Brown*, 2013 WL 5495674 at *2 (quoting *Greene*, 250 F.3d at 479). Thus, while the information provided by the second confidential source, as set forth in the affidavit, is likely insufficient to show probable cause on its own, when taken into account along with the consistent statements from the informant, the Court concludes that the issuing judge could consider

11

the second confidential source as part of the totality of the circumstances supporting a finding of probable cause.[5]

### B. "Good Faith" Exception

The magistrate judge also found that even if there was insufficient probable cause for the issuance of a search warrant, the good faith exception, as set forth in *United States v. Leon*, 468 U.S. 897, 909 (1984), applies in this case. The defendant argues that a reasonably trained officer would have known that the search was unlawful.

Generally, the "remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible." *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000). In light of this principle, courts have "'recognized an exception to the exclusionary rule where the officer conducting the search acted in an objectively reasonable reliance on a warrant issued by a detached and neutral magistrate . . . .'" *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013) (quoting *United States v. Watson*, 498 F.3d 429, 431 (6th Cir. 2007)). This is known as the good-faith exception. *Id.* The exception has limits, however, as "the good-faith exception does not apply to affidavits so lacking indicia of probable cause that a belief in the existence of probable cause would be objectively unreasonable." *Id.* (quoting *United*

---

[5] Given the Court's finding that probable cause could be determined by consideration of the information provided by the informant alone, or by the information provided by the informant and the second confidential source, the Court concludes that, assuming Aycocke's statements with regard to "citizen complaints" were inappropriate to consider under the totality of the circumstances analysis, probable cause still existed.

12

*States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).[6] In other words, the good-faith exception does not apply where a "'reasonably trained officer would have known the search was illegal despite the magistrate judge's authorization'" [Doc. 33 at 10 (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984))].

In this case, the only exception relevant to these facts is whether Mr. Aycocke, as one of the executing officers, unreasonably relied on the search warrant because it was devoid of probable cause. The search warrant was based on an affidavit which describes in detail the property to be searched, identifies the owner of the property, and the criminal history of the owner, describes a controlled purchase that had occurred less than three days prior to the issuance of the search warrant, and relays information about the defendant's drug activity from two confidential sources. There is no argument that the affidavit was filled out in bad faith, or that there was any indication that the affidavit was illegal despite the magistrate's authorization. The defendant cites to *United States v. Leak*, 998 F.2d 1359 (1993), for the idea that an officer who knew additional corroboration was needed but who never obtained it could not fall under the good-faith exception. In that case, however, the officer testified that he knew he had to corroborate information provided to him in an anonymous tip, or otherwise obtain independent evidence, but failed to do so. *Id.* at 1367. In this case, there is nothing to indicate that

---

[6] The Court notes that there are other circumstances which would prohibit application of the good-faith exception, none of which are material to this case: (1) when a search warrant is based on an affidavit that the affiant knows contains false information; (2) when the magistrate judge serves as a rubber stamp for police activities; and (3) when the warrant is so facially deficient it cannot reasonably presumed to be valid. *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

13

Aycocke knew that the information provided to him by the informant needed to be independently corroborated, in light of Aycocke's experience with the informant and the informant's past reliability. The Court thus concludes that, assuming there was insufficient probable cause to issue the search warrant for the defendant's property, the evidence collected therefrom would be subject to the good-faith exception to the exclusionary rule.

## IV. Conclusion

In sum, after reviewing the record in this case, including the R&R, the objections, the underlying briefs, and the relevant law, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motion to suppress. Further, the Court agrees with the magistrate judge's analysis and findings. Accordingly, and for the reasons previously stated, the defendant's objections to the R&R [Doc.33] are **OVERRULED**, the R&R [Doc. 32] is **ACCEPTED in whole**, and the defendant's Motion to Suppress [Doc. 11] is hereby **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* NOVEMBER 22, 2013.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE